# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARCAL FRACTION,** | : | |
| **Petitioner** | : | **CASE NO. 3:14-CR-305** |
| **v.** | : | **(MANNION, D.J.)** |
| **UNITED STATES OF AMERICA** | : | |
| **Respondent** | : | |

## MEMORANDUM

Pending before the court is petitioner Marcal Fraction's ("Fraction") *pro se* Motion to Vacate, Set Aside, or Correct his 120-month sentence of imprisonment imposed on August 16, 2017. (Doc. 540). Fraction is currently serving his prison sentence at FCI-McKean in Bradford, Pa. Fraction's motion is filed pursuant to 28 U.S.C. §2255 and is based upon ineffective assistance of counsel claims against his trial counsel. Fraction claims that his counsel was ineffective for failing to file a requested appeal alleging that the court erred in determining that he was a career offender under the Sentencing Guidelines and, he requests the court to reinstate his appeal rights and to resentence him without the career offender classification. Upon the court's review of the record in this case, Fraction's motion, (Doc. 540), as well as the government's response, (Doc. 543), Fraction's motion will be **DENIED** without the need for an evidentiary hearing.

1

## I.    BACKGROUND[1]

On November 25, 2014, an Indictment was filed against Fraction and several co-defendants. (Doc. 47). On October 5, 2016, Fraction pled guilty to Count 1 of the Indictment charging him with conspiracy of possession with intent to distribute cocaine, in violation of 21 U.S.C. §846, pursuant to a plea agreement. (Doc. 401, Doc. 412). The court directed that a pre-sentence report ("PSR") be prepared. The final PSR was filed on January 20, 2017. (Doc. 496). The PSR found that Fraction was a career offender based on his three prior drug trafficking convictions.

The PSR calculated a base offense level of 16, given the amount (100 grams but less than 200 grams) of cocaine involved in Fraction's offense. The PSR, (Doc. 496 at 8), then found that Fraction was a career offender and stated as follows:

> The defendant was at least 18 years old at the time of the instant offense of conviction; the instant offense of conviction is a felony that is a controlled substance offense; and the defendant has at least two prior felony convictions of controlled substance offenses (paragraphs 34, 36, and 38); therefore, the defendant is a career offender. The offense level for a career offender is 32 because the statutory maximum term of imprisonment is 20 years, under USSG §4B1.1(b)(3).[2]

_____

[1]This case was originally assigned to District Court Judge Edwin M. Kosik, and it was reassigned to the undersigned on July 25, 2016. Since the complete factual background of this case is detailed in the PSR filed on January 20, 2017, (Doc. 496), it shall not be fully repeated herein.

[2]Fraction's prior felony drug convictions are specified in the PSR, (Doc. 496 at 9-10), and they shall be addressed below. The PSR indicated that

2

Fraction's offense level was also reduced by three levels for acceptance of responsibility, pursuant to USSG §3E1.1(a) and §3E1.1(b), rendering his total offense level a 29. (Id.).

The maximum term of imprisonment Fraction faced was 20 years pursuant to of 21 U.S.C. §841(b)(1) (C). The PSR concluded that based upon a total offense level of 29 and a criminal history category of VI, Fraction's guideline imprisonment range was 151 to 188 months. (Id. at 14).

Fraction filed objections to the PSR, (*see* Doc. 497), claiming, in part, that he was entitled to a downward departure from the guidelines pursuant to USSG §4A1.3(b) based on an over representation of his criminal history. He then filed a sentencing memorandum on February 22, 2017. (Doc. 513).

Fraction's sentencing hearing was held on February 23, 2017. (Doc. 522). Fraction's counsel argued that if Fraction technically was a career offender under the guidelines, the career offender guideline substantially over represented his criminal history. The court overruled Fraction's objections and adopted the PSR, (Doc. 526), and then sentenced Fraction to a term of 120 months imprisonment, which was below the recommended guideline range, followed by a 3-year term of supervised release. Fraction was also ordered to pay a special assessment of $100. (Doc. 525). Fraction began serving his 120-months prison sentence on March 17, 2017.

---

Fraction had three prior drug trafficking convictions.

Fraction did not file a direct appeal of his sentence to the Third Circuit Court of Appeals.

On June 12, 2017, Fraction sent a letter to this court, (Doc. 533), asking whether he was eligible for re-sentencing under United States v. Jordan, 853 F.3d 1334 (10th Cir. 2017), and United States v. Jenkins, 854 F.3d 181 (2d Cir. 2017). Fraction stated that in *Jenkins*, the Second Circuit "reversed a with-in guidelines sentence as substantively unreasonable where the court neglected to consult a readily available guideline sentencing statistic from the U.S. Guidelines Sentencing Commission." Specifically, Fraction contends that:

> This also may have happened in my case as it is completely not understood by me how I received the major amount of time as opposed to my eight co-defendants that were also sentenced in this district court. If anyone had been the least culpable in my case, it was me, not them, but most likely due to their cooperation with the feds against me, it was used to distribute to me the most time. 120 months I was given and they themselves received a fraction of this and again, I had the least culpability of all of us.

As relief in his letter, Fraction asks the court to appoint him new counsel to determine if he is eligible for re-sentencing based on the alleged "new guidelines and provisions" and based on *Jordan* and *Jenkins*.

On August 16, 2017, Fraction timely filed his instant Motion to Vacate, Set Aside, or Correct his February 23, 2017 sentence pursuant to 28 U.S.C. §2255, seeking reinstatement of his right to appeal and re-sentencing without career criminal classification. (Doc. 540). He simultaneously filed a brief in

support. (Doc. 541). On September 7, 2017, the government filed a brief in opposition. (Doc. 543). Fraction did not file a traverse and the time within which it was due has expired.

## II.    STANDARD

When a district court judge imposes a sentence on a defendant who believes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [the defendant] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. §2255, ¶1; *see* United States v. Eakman, 378 F.3d 294, 297-98 (3d Cir. 2004).

The rule states that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." *See* United States v. Bendolph, 409 F.3d 155, 165 n. 15 (3d Cir. 2005) (stating district courts have the power to dismiss petitions *sua sponte* during the Rule 4 stage of habeas proceedings).

A §2255 motion "is addressed to the sound discretion of the district court." United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980). "[A] motion under 28 U.S.C. §2255 is the proper procedure for a federal prisoner

to raise a collateral attack on his or her federal sentence for any error that occurred at or prior to sentencing." Paulino v. U.S., 2010 WL 2545547, *2 (W.D.Pa. June 21, 2010) (citations omitted). "In order to prevail on a §2255 motion to vacate, set aside, or correct a sentence, a Petitioner must show '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" U.S. v. Bates, 2008 WL 80048, *2 (M.D.Pa. Jan. 7, 2008) (quoting Mallet v. U.S., 334 F.3d 491, 496-97 (6th Cir. 2003)). "The petitioner bears the burden of proof under §2255 and must demonstrate his right to relief by a preponderance of the evidence." U.S. v. Ayers, 938 F.Supp.2d 108, 112 (D.D.C. 2013) (citation omitted). Fraction's instant claims fall within the purview of §2255 since they challenge the validity of his sentence. Bates, 2008 WL 80048, *3 ("Claims of ineffective assistance of counsel may be brought in the first instance by way of a §2255 motion regardless of whether the movant could have asserted the claim on direct appeal.") (citing Massaro v. U.S., 538 U.S. 500, 504, 123 S.Ct. 1690 (2003)).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the assistance of counsel for his defense." U.S. Const. amend. VI. The U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984) established a two-prong test to evaluate the effectiveness of the assistance of counsel. In the first prong, the defendant must show "that counsel's performance was deficient," id., 687, and must prove this by

"showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. In addition, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id., 687-88.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.

Id., 689.

In the second prong, a defendant must show that counsel's deficient performance "prejudiced the defense," because "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, cf. United States v. Valenzuela–Bernal, 458 U.S. 858, 866–867 (1982), and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id., 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome." Id., 694. Thus, to state a successful claim for ineffective assistance of counsel, petitioner must show "both that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527 (2003). "A failure to make the required showing on either prong defeats a defendant's ineffective assistance of counsel claim." Ayers, 938 F.Supp.2d at 113 (citing Strickland, 466 U.S. at 700).

## III. DISCUSSION

This court has jurisdiction over Fraction's motion under § 2255 pursuant to pursuant to 28 U.S.C. §§1331 and 2241.

In his §2255 Motion for Relief, Fraction requests the court to reinstatement his appeal rights and re-sentence him without the career offender classification which he received. He bases his motion on claims of ineffective assistance of counsel. Specifically, Fractions claims his counsel failed to file a requested appeal which argued that the court erred in determining he was a career offender. However, Fraction does not point to any evidence in support of this assertion.

The court analyzes Fraction's claims of ineffective assistance of counsel using the two-pronged approach prescribed in *Strickland*.[3]

---

[3]Despite the fact that Fraction did not raise his instant claims in a direct appeal, he is not procedurally barred from collaterally attacking his sentence

8

In United States v. Doss, 2017 WL 1709397, *3 (M.D. Pa. May 3, 2017), appeal pending, the court addressed the type of *Strickland* analysis which the court must generally conduct when a defendant raises an ineffective assistance claim based upon counsel's failure to file an appeal pursuant to Roe v. Flores-Ortega, 528 U.S. 470 (2000). *See* Harrington v. Gillis, 456 F.3d 118, 125 (3d Cir. 2006). The *Doss* Court, *id*., then stated:

> In *Flores-Ortega*, the Supreme Court held that defense counsel must consult with their client about an appeal in situations where a rational defendant would want to appeal or where the defendant actually expressed interest in appealing. Flores-Ortega, 528 U.S. at 480. The Court defined "consult" as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id. at 478.
>
> The first step in the *Flores-Ortega* analysis is to determine whether counsel consulted with his client about an appeal. Harrington, 456 F.3d at 125. When counsel consults with the defendant, failure to follow the defendant's express instructions to file an appeal is professionally unreasonable and satisfies the first *Strickland* prong. *See id.* (quoting Flores-Ortega, 528 U.S. at 478). When counsel does not consult with the defendant, representation will be deemed deficient if a rational defendant would want to appeal or if the defendant actually expressed interest in appealing. Flores-Ortega, 528 U.S. at 480.
>
> To satisfy the second *Strickland* prong, a defendant must show a reasonable probability that "but for counsel's deficient failure to

under §2255 since ineffective assistance of counsel claims are an exception to the general rule of procedural default. Massaro v. United States, 538 U.S. 500, 504 (2003). In fact, "ineffective assistance of counsel claims are generally not considered on direct appeal." Rather, "they are more commonly brought in a collateral proceeding, such as through a post-conviction 28 U.S.C. §2255 motion to vacate." U.S.A. v. Washington, --- F.3d ----, 2017 WL 3695129, *6 (3d Cir. Aug. 28, 2017) (citation omitted).

consult with him about an appeal, he would have timely appealed." Id. at 484. Factors relevant to this inquiry include whether the defendant pled guilty, whether he received a bargained-for sentence, and whether he waived some appellate rights. Id. at 480. Failure to appeal despite the defendant's express instructions to do so is presumptively prejudicial under *Flores-Ortega*. Id. at 484.

In Fraction's plea agreement, (Doc. 410), he did not waive his appellate rights as he now states in his brief. (Doc. 541 at 5). As such, the court must engage in a *Flores-Ortega* presumption of prejudice analysis. *Compare* Doss, 2017 WL 1709397, *4 (defendant waived his appellate rights in his plea agreement and the court found that "the policy considerations undergirding the *Flores-Ortega* presumption are not implicated when the defendant has waived his right to appeal.") (citations omitted). Thus, there is a presumption of prejudice under the second *Strickland* prong if counsel fails to file an appeal when the defendant expressly instructs him to do so. *See* Flores-Ortega, 528 U.S. at 484.

In his brief, (Doc. 541 at 1), Fraction states that his counsel failed to "file a specifically requested Notice of Appeal." Fraction also states that "[significantly] [he] never agreed to the career offender enhancement, and therefore instructed his attorney after sentencing, to file an appeal." (Id. at 3). However, he states that his counsel "declined to file the requisite Notice of Appeal, giving as his reason for not doing so, that his fee/contract [as a CJA attorney appointed to represent Fraction] did not cover the prosecuting (sic) of a direct appeal." (Id.).

10

Fraction also argues that a "rational defendant" would want to file an appeal since the PSR applied the career offender enhancement to him raising his offense level from 16 to 32, but that the PSR "did NOT present proper documentation of the alleged qualifying predicate convictions(s) it would rely upon" and he does not recall any of the drug convictions. Rather, he only recalls the simple assault conviction.

It is settled that "[w]here defense counsel fails to object to an improper enhancement under the Sentencing Guidelines, counsel has rendered ineffective assistance." U.S. v. Otero, 502 F.3d 331, 336 (3d Cir. 2007) (citation omitted). Thus, if Fraction's counsel failed to object to Fraction's career offender enhancement and this enhancement was not properly applied in his case, then his counsel was ineffective.

The PSR specifically identified the drug trafficking convictions upon which it relied to find that Fraction was a career offender. In particular, the PSR, (Doc. 496 at 9-10), specifically indicated Fraction's adult criminal convictions, including the following drug convictions:

> 11/18/02 Arrest; Conviction for Criminal Sale of a Controlled Substance/ Queens County Supreme Court, NY; 5/1/03 sentence of 1 to 3 years imprisonment.
>
> 2/19/04 Arrest; Conviction Criminal Sale of a Controlled Substance/ Queens County Supreme Court, NY; 3/31/06 sentence of 2 to 4 years imprisonment.
>
> 5/4/09 Arrest; Manufacture, Deliver, and Possession of a Controlled Substance/ Monroe County Court, PA; 8/31/10 sentence of 2 years imprisonment.

Fraction argues that the PSR merely relied upon convictions for simple possession of a controlled substance and that such offenses do not constitute predicate offenses under USSG §4B1.1(a) for a career offender enhancement based on Salinas v. United States, 547 U.S. 188 (2006).

Fraction concludes in his brief, (Doc. 541 at 5), as follows:

> Accordingly, the "rational defendant" criteria is met here in that, none of the predicate conviction paragraphs, i.e., ¶¶ 34, 36, and 38, in the PSR present "reliable" documentation of predicate convictions, for which a "rational defendant," would surely want to appeal; and under the second prong, this defendant, "reasonably demonstrated to counsel" that he wanted to appeal, where he requested as much of counsel, but was told that counsel's fee did not cover a Direct Appeal.

Contrary to Fraction's assertion, the court finds that the PSR did list at least two prior felony convictions for controlled substance offenses which qualified Fraction as a career offender under USSG §4B1.1(a). To qualify as a career offender, the defendant must have at least two prior felony convictions for controlled substance offenses. *See* USSG §4B1.1(a); United States v. Mateo, 560 F.3d 152 (3d Cir. 2009); U.S. v. Brown, 765 F.3d 185, 188 (3d Cir. 2014). As the government points out, (Doc. 543 at 8), Fraction qualified as a career offender pursuant to §4B1.1 based on the following three predicate felony convictions for controlled substance offenses: his 2003 conviction for criminal sale of a controlled substance (PSR ¶34); his 2006 conviction for criminal sale of a controlled substance (PSR ¶36); and his 2010 conviction for manufacture, deliver, and possession of a controlled substance

(PSR ¶38). (*See* Doc. 496 at 9-10). *See* United States v. Santana, 677 Fed.Appx. 744 (3d Cir. 2017) (Third Circuit held that defendant's New York state conviction for attempted sale of a controlled substance was a "controlled substance offense" under USSG §4B1.2(b).).

In Santana, 677 Fed.Appx. at 745-46, the Third Circuit stated "[t]he Guidelines define a 'controlled substance offense,' in relevant part, as an offense 'that prohibits the ... export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to ... export, distribute, or dispense.'" (citing USSG §4B1.2(b)). In the present case, the PSR briefly detailed the facts of each of Fraction's qualifying predicate offenses. Regarding his 2003 conviction, the PSR stated, "[o]n November 18, 2002, Marcal Fraction sold a quantity of drugs to an undercover police officer in Queens, New York." Regarding his 2006 conviction, the PSR stated, "[o]n February 19, 2004, Marcal Fraction sold a quantity of a controlled substance to an undercover police officer at the corner of 109th Avenue and Liverpool Street, Jamaica, New York." Regarding his 2010 conviction, the PSR stated:

> On May 4, 2009, Pennsylvania State troopers on Interstate 80 West initiated a traffic stop on a vehicle that was operating too close to another vehicle. Marcal Fraction was identified as the driver. Troopers immediately detected a strong odor of marijuana. It was determined that Marcal Fraction was operating with a suspended license. He consented to a search of his vehicle, and troopers recovered approximately one ounce of cocaine base (crack), one ounce of marijuana, and packaging materials.

13

(Doc. 496 at 9-10).

Fraction's predicate drug offenses fit neatly within the Guidelines' definition of a "controlled substance offense."

The holding in the *Salinas* case that simple possession of a controlled substance is not a "controlled substance offense" for career offender guideline purposes is inapplicable to Fraction's case since his above three stated drug convictions were not simple possession offenses as he claims.

Moreover, Fraction pled guilty and he indicated in his plea agreement, (Doc. 410), that he understood that the total maximum possible prison sentence for the charge he was pleading guilty to was 20 years in prison. The plea agreement also provided that the government would recommend that Fraction receive a 3-level reduction in his offense level for acceptance of responsibility. The parties also agreed to recommend at least 100 grams but less than 200 grams of cocaine were attributable to Fraction for the purposes of sentencing. The government also reserved the right to recommend a sentence up to and including the maximum sentence of imprisonment. The government met all of its obligations under the plea agreement. Based on this backdrop, the court finds that Fraction received a bargained-for sentence of 120-months which was half of the maximum possible sentence he could have received and was below the guideline range. (*See* Doc. 526).

Therefore, no "rational defendant" would want to file an appeal in Fraction's case since the PSR properly found that Fraction was a career

offender based on the above stated record. As such, Fraction's counsel was not ineffective for failing to file an appeal with respect to Fraction's classification as a career offender since there was no basis in fact or law to raise such an objection. *See* Real v. Shannon, 600 F.3d 302, 310 (3d Cir. 2010) (Third Circuit held that trial counsel was not ineffective for failing to raise a meritless objection); Werts v. Vaughan, 228 F.3d 178, 203 (3d Cir. 2000) (Third Circuit found that counsel cannot be held ineffective for failing to pursue a meritless claim.); Washington, --- F.3d ----, 2017 WL 3695129, *7 ("[B]oth deficiency and prejudice must be proven to have a valid [ineffective assistance of counsel] claim for relief.") (citation omitted); Strickland, 466 U.S. at 694 (to establish the prejudice prong the defendant must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different"). Fraction has failed to overcome the presumption that his trial counsel's performance was reasonable. *See* Strickland, 466 U.S. at 689. Moreover, despite the fact that Fraction's base offense level would have dropped from 32 to 16 without the career offender enhancement, his 120-month sentence was still below the guideline range. Thus, the court finds no merit to Fraction's claim in his §2255 motion and will deny his request to reinstate his appeal rights and to remove his career offender classification.

Finally, Fraction requests the court to appoint him counsel so he can find out if he is eligible for a sentence reduction based on the *Jenkins* and *Jordan* cases. (Doc. 533, letter). Fraction could have raised any claim he had

regarding a sentence reduction based on the stated two cases in his instant §2255 motion but he did not do so. Further, Fraction's §2255 motion and support brief, (Doc. 541), demonstrate that he was more than capable of raising any claims he believed he had under *Jenkins* and *Jordan* on his own, that he could have raised such claims in his instant motion, and that he did not require counsel to raise such claims on his behalf.[4]

Additionally, the court finds that Fraction is not entitled to a sentence reduction based on either United States v. Jenkins, 854 F.3d 181 (2d Cir. 2017), or United States v. Jordan, 853 F.3d 1334 (10th Cir. 2017), since he was sentenced as a career offender, his 120-month sentence was not excessive and, it was well below the statutory maximum sentence he was facing and it was well under his guideline range.

In Jenkins, 854 F.3d at 187, the Second Circuit stated that "[a] sentence

---

[4]In fact, Fraction must file a Motion for Leave to File a Successive §2255 Motion with the Third Circuit pursuant to 28 U.S.C. §2244 seeking an order authorizing the district court to consider a second or successive application for habeas relief to raise any claims under *Jenkins* and *Jordan*. *See* Evans v. Pierce,  201 F.Supp.3d 560, 563 (D.De. 2016)("Under AEDPA, a prisoner cannot file a second or successive habeas application without first obtaining approval from the Court of Appeals and, absent such authorization, a district court cannot consider the merits of a subsequent application." (citing 28 U.S.C. §2244(b)(3)(A); Robinson v. Johnson, 313 F.3d 128, 139-40 (3d Cir. 2002)).

It appears that in this case any new proposed §2255 motion Fraction may file based on *Jenkins* and *Jordan* would not rest on facts that were unavailable when he filed his first §2255 motion in federal court since he filed his Doc. 533 letter raising claims under these case more than two months before he filed his Doc. 540 §2255 motion. Thus, any proposed new §2255 motion would appear to be "second or successive" under 28 U.S.C. §2255(h).

is substantively unreasonable if it 'cannot be located within the range of permissible decisions.'" (citing United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008); United States v. Rigas, 490 F.3d 208, 298 (2d Cir. 2007)). Initially, the Second Circuit decisions are not binding precedence on this court. Further, as discussed above, Fractions' 120-months sentence was not "excessively punitive or needlessly harsh" and it clearly did not fall into the category of Jenkins' sentence as being a "shockingly high" one that "serve[s] no valid public purpose."

In Jordan, 853 F.3d at 1337, defendant Jordan was sentenced at the top of the guideline range applicable in his case to 168 months. Jordan moved for a reduced sentence under §3582(c)(2). The district court denied the motion and found that Jordan's sentence was not "based on" the guidelines and thus he was not eligible for a sentence reduction. The Tenth Circuit reversed the sentence and held that "Jordan's sentence was 'based on' the Guidelines for purposes of §3582(c)(2)", and that he was eligible for relief. In the instant case, the court imposed a sentence on Fraction that was outside the guideline system, that was below the guideline range, and the court did grant the defendant's motion for a variance pursuant to 18U.S.C. §3553(a)(1) to which the government objected. Specifically, the court stated that the basis for granting Fraction's request for a variance was that "[t]he Court finds that a downward variance is appropriate based upon the history and characteristics of the defendant" and "[t]he Court acknowledges the

defendant's positive activities and rehabilitation efforts while on pretrial release." (Doc. 526).

Thus, even if the *Jordan* case was binding precedent on this court, it would be inapplicable to Fraction.

The court will now discuss whether Fraction is entitled to appointment of counsel to raise his claims under *Jenkins* and *Jordan* seemingly in a §2255 motion as he requests in his Doc. 533 letter.

"There is no absolute constitutional right to appointment of counsel in a federal habeas proceeding." U.S. v. Winkelman, 548 F.Supp.2d 142, 160 (M.D. Pa. 2008)(citing Coleman v. Thompson, 501 U.S. 722, 757, 111 S.Ct. 2546 (1991)). "However, under 18 U.S.C. §3006A(a)(2), representation may be provided for an indigent petitioner in a federal habeas claim when 'the interests of justice so require.'" Id. "[S]everal courts [including this court] have held that the factors set out by the Third Circuit [in Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993), *cert. denied*, 510 U.S. 1196, 114 S.Ct. 1306 (1994)] are equally applicable to 18 U.S.C. §3006A(a)(2), which pertains to appointment of counsel in habeas proceedings." Id. at 161 (citations omitted). "Under *Tabron*, the first consideration by a district court should be whether the petitioner's claim has 'some merit in fact and law.'" Id. (citing Parham v. Johnson, 126 F.3d 454, 457 (3d Cir.1997); Tabron, 6 F.3d at 157). Fraction's instant §2255 motion is essentially a federal habeas proceeding. *See Winkelman, supra*. Since neither *Jenkins* nor *Jordan* apply to Fraction's case,

18

as discussed above, any claim based on these two cases by Fraction would be meritless. Thus, Fraction is not entitled to appointment of counsel since the court had determined that his stated claims are entirely devoid of any merit. As such, the court is not required to consider the six additional *Tabron* factors. *See id.* Therefore, Fraction's request for relief in his Doc. 533 letter will be denied.

## IV.   EVIDENTIARY HEARING

Fraction specifically requests an evidentiary hearing. (Doc. 541 at 6-7) The government contends that the record is sufficient for the court to deny Fraction's §2255 motion without a hearing. The court finds that no evidentiary hearing is required in this case.

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255(b). *See* United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992)(The court is required to conduct an evidentiary hearing to ascertain the facts "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.")(citation omitted). However, the court need not accept the petitioner's allegations as true if they "are unsupported by specifics [or] wholly incredible in the face of

the record.") Patton v. United States, 2010 WL 3191887, \*1 (W.D. Pa. 2010) (citing United States v. Estrada, 849 F.2d 1304,1307 (10th Cir. 1988)).

Recently, in United States v. Murphy, 2017 WL 3537394 (M.D.Pa. Aug. 17, 2017), a case very similar to the instant case, defendant Murphy filed a §2255 motion claiming that his counsel was ineffective for failure to appeal his sentence as a career criminal and claiming that he "advised his counsel to file an appeal on his behalf relevant to his classification as a career offender." Murphy stated that he requested his counsel to file an appeal since his prior convictions allegedly did not qualify as predicate offenses. As Fraction requests in the present case, Murphy's requested relief was for the reinstatement of his right to appeal and re-sentencing without the career criminal classification. Murphy claimed, without supporting evidence, that at the conclusion of sentencing he requested his counsel to file an appeal regarding his career offender classification and that counsel advised him that he would file the appeal. However, Murphy states that his counsel failed to file the appeal.

The court in Murphy, 2017 WL 3537394, \*3, addressed the ineffective assistance of counsel claim of its defendant under *Flores-Ortega*, 528 U.S. at 478, stating that "the Supreme Court did clarify that where a criminal defendant expresses a wish to appeal, his or her counsel is professionally unreasonable if he or she fails to appeal", and that "the *Flores-Ortega* Court did not require, for grant of habeas corpus, a showing of meritoriousness

regarding an appeal not taken because of ineffective assistance of counsel." (citing Velazquez v. Grace, 277 Fed.Appx. 258, 260 (3d Cir. 2008)). The court in *Murphy*, *id.*, then considered whether its defendant was entitled to an evidentiary hearing stating that in its case "defendant would have to prove that he asked his lawyer to file an appeal and his lawyer agreed to do so but did not" and, that "[a]s a practical matter this would require an evidentiary hearing." The court in *Murphy, id.*, then addressed the case of Solis v. United States, 252 F.3d 289 (3d Cir. 2001), stating that Solis claimed the district court erred by denying him an evidentiary hearing since he claimed that after his sentencing he requested his counsel to file an appeal but counsel failed to file one. The district court in *Solis* denied defendant's §2255 motion without a hearing. Silos appealed and the Third Circuit vacated his sentence and remanded his case for a hearing pursuant to §2255. *See* Silos, 252 F.3d at 291.

The court in *Murphy*, *id.* at *3-*4, then stated:

we find that defendant's allegation that his prior drug trafficking felonies do not apply to career criminal classification is both contradicted conclusively by the record and patently frivolous under *Solis*: "[W]hen a defendant is convicted of a crime and alleges that his lawyer failed to appeal the conviction, and there is a potential factual dispute on this issue, the defendant is entitled to a hearing before the district court to prove that he made the request and that the lawyer failed to honor it. However, a defendant would not be entitled to a hearing if his allegations [in the habeas corpus motion] were contradicted conclusively by the record, or if the allegations were patently frivolous." (citations omitted) Id. at 295.

Defendant's allegations are patently frivolous here because there is no question that an appeal in the instant case, had it been filed, would have been denied thanks to defendant's three prior drug trafficking convictions, which appear in the record and conclusively contradict his allegations. In 2007 defendant was convicted of conspiracy to distribute and distribution of a controlled substance in a school zone. (Doc. 432 at 8) (citing (PSR ¶33)). In 2009 defendant was convicted of conspiracy to possess with intent to distribute a controlled substance. Id. (citing PSR ¶37). Also in 2009 defendant was convicted of attempted distribution of a controlled substance. Id. (citing PSR ¶38).

As the court found in *Murphy, id.* at \*4, this court finds that even if Fraction's counsel filed an appeal as he allegedly requested, "[it] would have been denied thanks to defendant's three prior drug trafficking convictions, which appear in the record and conclusively contradict his allegations." Similar to *Murphy*, the court finds that Fraction is not entitled to an evidentiary hearing since, as discussed, his three prior felony drug offenses, qualified to make him a career offender and he was properly classified as one. As such, Fraction's ineffective assistance of counsel claim is without merit.

A review of Fraction's motion and supporting brief, and the government's brief, as well as the law and the claims make it clear that Fraction's allegations are wholly unsupported by the record. The court finds that Fraction is not entitled to an evidentiary hearing because the record conclusively establishes that he is not entitled to the relief sought in his §2255 motion. Therefore, the court, in its discretion, finds no reason to hold an

evidentiary hearing. *See Murphy, supra*.

## V. CERTIFICATE OF APPEALABILITY

A petitioner may not file an appeal from a final order unless a district or circuit judge issues a certificate of appealability ("COA") pursuant to 28 U.S.C. §2253(c). A COA shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). The petitioner must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); *see also* Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, a COA will not issue because Fraction has shown neither the denial of a constitutional right nor that jurists of reason would disagree with this court's resolution of his claims.

## VI. CONCLUSION

Based on the foregoing, the court finds Fraction fails to show his trial counsel was ineffective or deficient in any way. Therefore, the court **DENIES** Fraction's §2255 Motion. (Doc. 540). Also, Fraction's request for relief in his Doc. 533 letter for appointment of counsel will be denied. An appropriate

order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**DATE: September 29, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CRIMINAL MEMORANDA\2014 CRIMINAL MEMORANDA\14-305-01.wpd