**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | | **3:14-CR-305** |
| | : | |
| **v.** | | |
| | : | **(JUDGE MANNION)** |
| **MARCAL FRACTION,** | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

## I.   BACKGROUND

On April 22, 2020, petitioner Marcal Fraction filed, *pro se*, an Emergency Motion for Compassionate Release from prison and Reduction of his 120-month Sentence under 18 U.S.C. §3582(c)(1)(A) and, he requests his immediate transfer to home confinement due to the COVID-19 pandemic. (Doc. 630). Fraction alleges that "extraordinary and compelling circumstances" exist warranting his release from prison and that the exhaustion requirement should be waived due to futility and the possible catastrophic health consequences in light of the pandemic. Fraction also attached a copy of the educational programs he completed while in prison. Fraction filed an amended motion on May 4, 2020, with Ex. A attached, namely, the Warden's April 29, 2020 denial of Fraction's April 27, 2020 request for compassionate release. (Doc. 635). There were also seven letters submitted by Fraction's family members, and one letter from a long

1

time acquaintance, requesting the court to release Fraction from prison at LSCI-Allenwood due to the COVID-19 virus to home confinement with his "newlywed wife Kimberly Fraction" in her house located in Plains, Luzerne County, Pennsylvania. (Docs. 627-629, 631-634, 639).

In particular, Fraction seeks the court to immediately release him from confinement in prison at LSCI-Allenwood, Low Security Camp, located in White Deer, Pennsylvania, to home confinement at his wife's house, due to his fear that he may contract the COVID-19 virus in prison and, his fear that if the virus was to spread in the prison, his health and life would be in jeopardy. Fraction alleges that "social distancing [in the prison] is near impossible to do because of the [open] dorm setting" "with 3 men [in] a 9 [foot] by 9 [foot] cube", and that "inmates are living like chickens in a coop." Fraction also alleges that the BOP is not enforcing the recommended safety measures to protect inmates from the COVID-19 virus, although he conceded that as of May 27, 2020, there were no positive cases of inmates or staff at LSCI-Allenwood. Fraction styled his motion as one for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i).

The court directed the government to respond to Fraction's motions and to include Fraction's medical conditions as well as the prison's measures to comply with the CDC's guidelines for the COVID-19 pandemic. The government filed its brief in opposition on May 7, 2020. (Doc. 637).

However, since the government's response failed to include Fraction's medical conditions as directed, the court issued an Order on May 21, 2020,

directing it to submit information regarding his conditions as well as any relevant BOP medical records. (Doc. 640).

Fraction filed a reply brief to the government's brief on May 22, 2020, (Doc. 641), in which he again acknowledges that he did not exhaust all of his BOP administrative remedies and argues that exhaustion should be excused since the COVID-19 virus is "an extraordinary compelling circumstance concerning a life and death situation."

In his reply, Fraction also includes his proposed plan to reside with his wife Kimberly if the court releases him to home confinement.[1]

The government filed its supplemental response on May 22, 2020, (Doc. 642), along with Fraction's BOP medical records from May 2018 to May 2020, and a motion to file the records under Seal, (Docs. 643, 644). The government represents that "[i]n general, [Fraction's medical] records demonstrate that the Defendant has not been diagnosed with or received treatment for any serious medical condition", and "that there is nothing in these records that provide any meaningful support for Defendant's request

---

[1]The number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal BOP, https://www.bop.gov/coronavirus/. In Luzerne County, where Fraction wishes to be placed on home confinement with his wife, as of June 22, 2020, it has 2864 confirmed COVID-19 cases and 171 deaths. *See* Pa. Dept. of Health website. However, in LSCI-Allenwood as of June 22, 2020 no staff member or inmate is reported to have tested positive for COVID-19. Thus, Fraction has not established that he would be less vulnerable to COVID-19 if he was released to home confinement.

for compassionate release." (Doc. 642 at 2). The court granted the government's motion to file Fraction's medical records under Seal.

On June 22, 2020, Fraction filed an addendum to his reply to the government's response to his motion. (Doc. 647). Fraction contends that the court can now consider his motion for compassionate release under §3582(c)(1)(A)(i) on its merits "due to the fact (30) days has elapsed from the BOP's denial [of his request.]" He also contends that since he had an upper respiratory infection in July of 2018 and again in early 2020, he qualifies under the CDC's guidelines as being "at high risk of severe illness from COVID-19" if he contracts it. Fraction also submitted three Exhibits, including his certificate of completion of the Residential Drug Abuse Program.

After considering Fraction's motion for compassionate release under §3582(c)(1)(A)(i), the court will dismiss it without prejudice for lack of jurisdiction due to his failure to exhaust all of his administrative remedies with the federal Bureau of Prisons ("BOP") under 28 C.F.R. §§542.10, *et seq.* To the extent Fraction is seeking the court to order the BOP to deem him eligible for immediate home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, the court does not have authority to grant his request for relief and order the BOP to release him to home confinement.[2]

---

[2]Since Fraction is proceeding *pro se*, the court liberally construes his motion as also seeking relief pursuant to the CARES Act in addition to a motion compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A).

## II.   DISCUSSION[3]

In his present motion, and amended motion, (Docs. 603 & 635), Fraction seeks his immediate transfer from LSCI-Allenwood to home confinement with his wife and requests the court to allow him to serve the remainder of his prison sentence in home confinement stating that he fears his health and his life will be at risk if he contracts the COVID-19 virus. However, Fraction, age 39, does not allege that he has any medical conditions which would make him more susceptible to serious complications if he did contract the virus.[4] His temporary respiratory infections do not qualify. The government has provided Fraction's BOP medical records which

---

[3]Since the court stated the complete background of this case in its prior decisions regarding Fraction's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255, (Docs. 544, 583, 594), and since respondent states the background in his instant brief, (Doc. 637), the court does not repeat it herein. Suffice to say that Fraction is currently serving a 120-month prison sentence that was imposed by this court on February 23, 2017, after he pled guilty to conspiracy to distribute and possession with intent to distribute cocaine, 21 U.S.C. §846. (Doc. 525). The court also ordered Fraction to be on three years of supervised release after he was released from prison.

Presently, Fraction's §2255 motion is pending and the court appointed counsel to represent him on May 7, 2020. (Doc. 638).

[4]The court considered Fraction's BOP medical records attached to the government's May 22, 2020 filing, Doc. 644. The court also considered Fraction's age, 39, as well as his physical condition stated in his medical records. Also, there is no indication that he takes any medications for any chronic medical condition. The records also reflect that Fraction is receiving medical care as he needs at the prison.

5

show that he does not have any recognized condition which would put him at a risk of suffering more severe complications if he did contract the COVID-19 virus.

Fraction also alleges that based on the open dormitory type setting in the prison's camp, as well as many common areas and close proximity of the inmates to each other, social distancing and other recommended safety measures cannot be practiced. As such, Fraction contends that in the camp setting if the COVID-19 virus is introduced, it will spread quickly.

In its response, the government represents that, "according to the BOP website, https://www.bop.gov/coronavirus/, which maintains a listing of all COVID-19 cases (and deaths) at BOP facilities, there are presently no inmate or staff positive cases (or deaths) at LSCI-Allenwood, where the defendant is serving his sentence." (Doc. 637 at 10). Further, it points out that "[t]he LSCI-Allenwood facility is required to follow the BOP's national COVID-19 protocols and continues to do so." (Id.). Additionally, the government states that "the facility has also promulgated a series of memos, unique to the institution, setting forth the manner in which it is specifically implementing national protocols", and the government attached the most recent protocols to his response as Exhibit G1. Further, the government points out that Fraction has only served about 38 months of his 120-month prison sentence. Thus, Fraction has not completed even 50% of his sentence.

As this court recently stated in <u>Cordaro</u>[5], 2020 WL 2084960, \*3, "[n]otwithstanding the myriad of alleged unsafe and unsanitary conditions at [the prison] camp, neither [Fraction] nor any other inmate at the camp have contracted the COVID-19 virus and, to date [June 22, 2020], the prison 'has no reported cases of inmates or staff who have tested positive for the COVID-19 corona virus.'"[6]

Exhaustion is a threshold issue regarding Fraction's motion for compassionate release. In his amended motion, (Doc. 635), Fraction indicates that he filed an administrative remedy by submitting a request for compassionate release on April 27, 2020 to the Warden pursuant to  BOP 5050.50. Fraction attaches a copy of the written response he received from Warden White on April 29, 2020 which denied his request. In his response, White states that Fraction at age 39 is not an eligible elderly inmate and that Fraction does not have any debilitating medical conditions. Thus, White denied Fraction's request and concluded that Fraction's general concerns for his health and safety based on the COVID-19 virus were not sufficient to

---

[5] Although Cordaro was housed at a different prison camp within this district, the circumstances at both are virtually the same.

[6] Since this court is well-aware of all of the safety measures implemented by the BOP in response to the COVID-19 virus, *see* <u>Cordaro</u>, *supra*, and since many of the measures are found on the BOP's websites, they are not repeated herein. Also, as directed, the government details the BOP's protocols it enacted to protect inmates and staff at federal prisons, including LSCI-Allenwood, as well as the citations and links to the BOP's websites. (Doc. 637 at 2-9, Ex. G-1). *See also* BOP website at: www.bop.gov/coronavirus/index.jsp.

reduce his sentence and release him to home confinement. White also advised Fraction that if he was not satisfied with his response, he may appeal it through the BOP's administrative remedy process. (Doc. 635 at 3).

Fraction alleges in his amended motion, that the general risk factors for COVID-19 "constitute extraordinary and compelling reason[s]" to excuse him from exhausting his BOP administrative remedies regarding his request for release to home confinement. As such, Fraction contends that he meets all of the exceptions to the exhaustion requirement, including the futility exception based on his claim that the COVID-19 virus along with the alleged conditions at LSCI-Allenwood present an extraordinary situation in which exhaustion should be excused. Fraction also contends that the exhaustion requirement can be waived in light of the "catastrophic health consequences" presented by COVID-19. Further, he states that to fully exhaust all of his BOP administrative remedies it can "take up to nine (9) months at least", and that due to the "worldwide pandemic" an "extreme emergency" exists so that it should not be required. (Doc. 647).

In his reply brief, Fraction also argues that exhaustion is futile and he alleges that he cannot appeal the Warden's April 29, 2020 denial of his request for compassionate release since "the administrative remedies for appeal is shut down." (Doc. 641). Fraction also incorrectly contends that the Warden's denial of his request "is exhausting [his] remedies." Further, Fraction incorrectly states that if the court waits for 30 days after he submitted his request to the Warden on April 27, 2020, then his instant

motion can be considered by the court. However, as the government states, (Doc. 637 at 12), "it is clear that Defendant has not fully exhausted his administrative remedy, or complied with the mandates of 18 U.S.C. §3582(c)(1)(A) [which] provides that the Court may not modify a term of imprisonment unless, [], 'upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [upon] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'"  (citing 18 U.S.C. §3582(c)(1)(A)) (emphasis original).

Thus, the 30-day wait period provided by 18 U.S.C. §3582(c)(1)(A) does not apply since the Warden timely denied Fraction's request. As such, Fraction must now appeal the Warden's decision through the BOP administrative remedy process, as the Warden advised Fraction. Additionally, the court finds no merit to Fraction's unsubstantiated allegation that the BOP administrative remedy appeal process is "shut down" since Fraction is clearly able to send out his mail from the prison and file documents with this court.

In his reply briefs, Fraction does not challenge the government's contention that he failed to appeal the Warden's denial of his request.

As the court in United States v. Smith, 2020 WL 2063417, *2 (N.D.Oh. April 29, 2020), explained:

Smith has also failed to fully exhaust his administrative remedies with respect to his original motion. Because the Warden explicitly denied his 2019 request for compassionate release, Smith needed to exhaust by appealing the Warden's decision. *See* 28 C.F.R. §542.15(a); *see also* B.O.P. Program Statement 5050.50 §571.63 (citing the Administrative Remedy Program appellate procedure as the proper method of administratively appealing a denied §3582(c)(1)(A)); *see, e.g.*, United States v. Brummett, 2020 WL 1492763, at *1-2 (E.D.Ky. Mar. 27, 2020)(denying request for compassionate release due to COVID-19 for failure to exhaust because inmate did not appeal warden's denial of his request for a reduction in sentence).

Thus, it is clear that Fraction has not exhausted all of his BOP administrative remedies prior to his instant filing. Since White denied Fraction's April 27, 2020 request for release to home confinement on April 29, 2020, Fraction must still file an appeal with the BOP Regional Director, within 20 calendar days of the date the Warden signed the response. 28 C.F.R. §542.15(a). Then if the Regional Director denies his appeal, Fraction must appeal that decision to the BOP General Counsel, within 30 calendar days from the date the Regional Director signed the response. *Id.* The appeal to the General Counsel is the final administrative appeal in the process. *Id.*

Also, since the Warden timely responded to Fraction's request, Fraction cannot directly file his motion with the court without exhausting his administrative remedies. *See* United States v. Blevins, 2020 WL 3260098, *3 (S.D. Miss. June 16, 2020) ("If an inmate's request is denied before the lapse of 30 days, then he must fully exhaust administrative remedies before the Court may consider his motion to modify his sentence under the statute.") (citation omitted). "Therefore, a defendant does not satisfy the exhaustion

requirement of §3582(c)(1)(A) if he does not appeal the warden's decision to deny compassionate release." *Id.* (citing <u>United States v. Pinson</u>, 2020 WL 2771343, at *3 (S.D.Tex. May 28, 2020) ("finding defendant's failure to appeal warden's denial of compassionate release meant that he failed to exhaust his administrative rights"). If the Warden fails to respond to the inmate's request within 30 days, then he can file his motion for compassionate release with the court without fully exhausting his BOP administrative remedies.

As in <u>Cordaro</u>, 2020 WL 2084960, *4, because Fraction has not exhausted all of his administrative remedies available with the BOP regarding his motion, the court will dismiss it without prejudice. *See* <u>Furando v. Ortiz</u>, 2020 WL 1922357 (D.N.J. April 21, 2020) (court dismissed without prejudice the petition of inmate serving his federal sentence at FCI-Fort Dix who sought immediate release to home confinement under the CARES Act, based on the COVID-19 virus and his age and chronic medical conditions which he alleged put him at high risk if contracted the virus, due to his failure to exhaust his BOP administrative remedies available under 28 C.F.R. §§542.10 to 542.19.); <u>Smith</u>, 2020 WL 2063417, *2 ("Absent a showing of exhaustion, this Court cannot rule on [defendant's] request for compassionate release.") (citation omitted).

The court finds that Fraction must exhaust all of his available BOP administrative remedies challenging the alleged denial of his release to home confinement. As in <u>Cordaro</u>, where the inmate was denied release by

the warden on April 18, 2020, this court found that the inmate must still pursue his remaining BOP administrative remedies to challenge the decision denying him release to home confinement. Also, as in Cordaro, 2020 WL 2084960, *5, "[t]he circumstances of [Fraction's] case fit squarely within the purposes of the exhaustion requirement." (citation omitted).

Recently, in United States v. Early, 2020 WL 2572276, *3 (W.D.Pa. May 21, 2020), the court considered a similar exhaustion issue as presented in the instant case, and stated: "Warden Williams responded to Defendant's request [for compassionate Release/Reduction in Sentence] within 30 days of receipt. Consequently, Defendant is obligated to complete the administrative appeal process. Therefore, this Court finds that Defendant has failed to exhaust his administrative remedies." The court in Early, id., also stated that the court may not waive the exhaustion requirement and that "exhaustion of [defendant's] administrative remedies is mandatory." (citing United States v. Raia, 954 F.3d 594 (3d Cir. 2020)). "In Raia, the Court of Appeals emphasized the BOP's statutory role and extensive efforts to control the spread of Covid-19, and held that the 'exhaustion requirement takes on added – and critical – importance.'" Id. (quoting Raia, 954 F.3d at 597). "The BOP is in the best position to consider the myriad of factors necessary in rendering a decision." Id.

Further, "[t]he statute [18 U.S.C. §3582(c)(1)(A)] does not provide an exception to this mandatory statutory exhaustion requirement, equitable or otherwise." Blevins, 2020 WL 3260098, *2 (citing United States v. Koons,

2020 WL 1940570, at *3 (W.D.La. Apr. 21, 2020) ("If an inmate's request is denied before the lapse of 30 days, then he must fully exhaust administrative remedies before the Court may consider his motion to modify his sentence under the statute."); United States v. Martin, 2020 WL 3065302, at *3 (S.D.Miss. June 9, 2020)) (district court criminal nos. omitted).

The court finds that even if the exceptions to the exhaustion requirement were applied in this case, none exist especially since there are no confirmed cases of the COVID-19 virus at LSCI-Allenwood, as of June 22, 2020.

Before the court will review the April 29, 2020 decision of White denying Fraction home confinement placement due to the COVID-19 virus, he must fully exhaust all BOP administrative remedies. In United States v. Solomon, 2020 WL 2768897, *3 (W.D.Pa. May 28, 2020), the court stated, "[c]ourts have interpreted [18 U.S.C. §3582(c)(1)(A)] to mean that an inmate must fully exhaust his administrative remedies unless his or her warden does not respond to the inmate's request within 30 days." (citing Early, 2020 WL 2572276, at *3). This court concurs with Early, Solomon, and Blevins, as well as the cases to which they cite, and finds that Fraction must wait to file a motion with the court after he fully exhausts all administrative rights with respect to the Warden's response to his request for compassionate release since the Warden responded to his request within 30 days from the date he submitted it. *See id.* (citing Early, 2020 WL 2572276, at *3). *See also* United States v. Martin, 2020 WL 3065302, *3 (S.D.Miss. June 9, 2020) (Court

13

"agree[d] with those courts interpreting the 'lapse' provision [i.e., the language in 18 U.S.C. §3582(c)(1)(A) providing that the court can consider a motion for compassionate release after the "lapse of 30 days from the receipt of such a request by the warden"] as having a futility component: it applies only when the BOP has failed to respond to a compassionate-release request within 30 days of its submission. If an inmate's request is denied before the lapse of 30 days, then he must fully exhaust administrative remedies before the Court may consider his motion to modify his sentence under the statute.") (citing Early, 2020 WL 2572276, at *3; Blevins, 2020 WL 3260098, *3 ("Inasmuch as [defendant's] request was denied [by the warden] before the lapse of 30 days, he is required to fully exhaust his administrative remedies before the Court may hear his motion. There is no evidence that [defendant] appealed the warden's decision with the BOP. By failing to appeal the warden's decision to the Regional Director, [defendant] has not fully exhausted his administrative rights and the suit must be dismissed."); United States v. Ng Lap Seng, ---F.Supp.3d---, 2020 WL 2301202, *5-6 (S.D.N.Y. May 8, 2020).

Moreover, Fraction is not elderly and he does not have any underlying chronic medical conditions putting him at a higher risk if he does contract COVID-19. Rather, he alleges that LSCI-Allenwood is not adhering to the safety measures to protect inmates from contracting the virus, and that there are "extraordinary and compelling" reasons justifying his compassionate release under §3582(c)(1)(A)(i). Nonetheless, Fraction has not been

14

exposed to the COVID-19 virus at LSCI-Allenwood, low security camp. Further, Fraction has not controverted with any evidence the substantial steps identified in the government's brief, (Doc. 637 & Ex. G-1), that the BOP is taking to protect the health and safety of both inmates and staff at the camp as well as all of the federal prisons. As the court mentioned, there are presently no confirmed cases of the COVID-19 virus at LSCI-Allenwood.

Even though Fraction presented a request for compassionate release to White and it was denied, his motion must be dismissed for lack of jurisdiction since he has not exhausted all of his administrative remedies under §3582(c)(1)(A). Here, it is undisputed that Fraction did not yet appeal White's April 29, 2020 denial of his request for compassionate release. Thus, the court cannot address whether Fraction has demonstrated, as he alleges, that "extraordinary and compelling reasons" justify his compassionate release from prison since he has not exhausted his administrative remedies with the BOP as required. Cordaro, 2020 WL 2084960, *6 (citing Zukerman, 2020 WL 1659880, *2 ("in order to be entitled to relief under 18 U.S.C. §3582(c)(1)(A)(i), [Fraction] must both meet the exhaustion requirement and demonstrate that 'extraordinary and compelling reasons' warrant a reduction of his sentence.")) (emphasis added); Raia, 954 F.3d 594 ("The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons'" after the defendant exhausts administrative remedies with the BOP.) (citing 18 U.S.C §3582(c)(1)(A)(i)); United States v. Soto, 2020 WL 1875147, *1 (D.Co. April 15, 2020) ("18

15

U.S.C. §3582(c)(1)(A) imposes a requirement on a defendant requesting compassionate release to exhaust all administrative rights before seeking such relief.") (citation omitted); <u>United States v. Boyles</u>, 2020 WL 1819887, *2 (D.KS. April 10, 2020) (the court held that since defendant did not exhaust his BOP administrative remedies as required, "it [did] not decide whether he has established that there are 'extraordinary and compelling reasons' why he should be released."); <u>United States v. Wright</u>, 2020 WL 1976828 (W.D.La. April 24, 2020) (court did not need to address whether inmate demonstrated extraordinary and compelling reasons to warrant his release to home confinement under the provisions of the compassionate release statute "due to the grave dangers presented by COVID-19" since inmate did not exhaust his administrative remedies under 18 U.S.C. §3852(c)(1)(A), which is mandatory and "the Court has no power to waive the exhaustion requirement."); <u>United States v. Edwards</u>, 2020 WL 1987288 (MD.Tn. April 27, 2020) (after an extensive review of recent cases filed in light to the COVID-19 pandemic, the court concluded that "[it] cannot consider the Motion [for compassionate release] until the exhaustion requirement of 18 U.S.C. §3582(c)(1)(A(i) is satisfied", and denied the Motion without prejudice to refiled it once exhaustion was completed); <u>United States v. Johnson</u>, ---F.3d---, 2020 WL 1663360, *6 (D.Md. April 3, 2020) (Court held that since prisoner seeking relief under §3582(c)(1)(A) did not fully exhaust his administrative remedies, it lacked jurisdiction over motion and would not

16

consider whether prisoner presented "extraordinary and compelling reasons" warranting his release from prison until exhaustion was completed).

Further, the court finds that Fraction does not demonstrate any "catastrophic health consequences" to make exhaustion futile or show that he could be unduly prejudiced if he had to wait to exhaust his administrative remedies with the BOP. *See* Zukerman, 2020 WL 1659880, *3. Rather, he merely speculates that he may be exposed to COVID-19 if he comes into contact with someone at the prison who has the virus and he speculates that based on the severity of the virus when some people contract it he may get very sick if he did contract the COVID-19 virus.

As the Third Circuit in Raia, 954 F.3d at 597, explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted). The Third Circuit then stated, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with §3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id. See also* United States v. Zywotko, 2020 WL 1492900, *2 (M.D.Fl. Mar. 27, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. §1B1.13.") (citation omitted).

As such, to the extent Fraction's motion is one for compassionate release from prison to home confinement under, 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), it will be dismissed without prejudice for failure to exhaust all of his BOP administrative remedies. *See* Cordaro, 2020 WL 2084960, *5. *See also* Early, 2020 WL 2572276, *2 (citing 28 C.F.R. §542.15(a)); Blevins, 2020 WL 3260098, *3.

Finally, to the extent Fraction is deemed as relying on the CARES Act, which was signed into law on March 27, 2020, as well as Attorney General Barr's March 26, 2020 and April 3, 2020 Memoranda to the BOP, such reliance is misplaced.[7]

Under the CARES Act "Congress sought to address the spread of the coronavirus in prisons by permitting BOP to expand the use of home confinement under [Section 602 of the First Step Act] §3624(c)(2)." Furando, 2020 WL 1922357, *2 (citing Pub. L. No. 116-36, §12003(b)(2)). "Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months." *Id.*

Thus, the CARES Act provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020, the BOP Director may increase the maximum amount

---

[7]*See also* Furando, 2020 WL 1922357, *2-3 (court summarized Barr's two Memoranda).

of time that a prisoner may spend in home confinement under the first sentence of 18 U.S.C. §3624(c)(2). *Id.* at *3.

As such, "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons." *Id.*; Cordaro, 2020 WL 2084960, *6. *See also* Blevins, 2020 WL 3260098, *4 ("The passage of the [CARES Act] has not provided district courts the authority to order an inmate to be transferred to home confinement", and "the Court must deny [defendant's] request for release to home confinement as this Court lacks authority to order the BOP to transfer the defendant to home confinement.") (citations omitted).

As the court in United States v. Sawicz, 2020 WL 1815851, *1 (E.D.N.Y. April 10, 2020), recently explained:

> [The] CARES Act expanded the maximum amount of time that a prisoner may spend in home confinement: "if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement ...." CARES Act §12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr made the requisite "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons" on April 3, 2020, thereby triggering the BOP's authority to expand the amount of time that a prisoner may spend in home confinement.

The determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director. (United States v. Doshi, 2020 WL 1527186, *1 (E.D.Mi. March 31, 2020) (The CARES Act "temporarily permits the Attorney General to 'lengthen the maximum amount of time for

which [it] is authorized to place a prisoner in home confinement' under §3624(c)(2)", and "the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons."); United States v. Coker, 2020 WL 1877800, *1 (E.D.Tenn. April 15, 2020) (court stated that while section 12003 of the [CARES Act] "presently and temporarily provides for expanded prisoner home confinement", "[t]he CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons.") (citations omitted); United States v. Berry, 2020 WL 1984117, *3 (M.D.Pa. April 27, 2020) (same). Thus, "[c]ourts … do not have power to grant relief under Section 12003 of the CARES Act." *Id.* (citations omitted); United States v. McCann, 2020 WL 1901089, *3 (E.D.Ky. April 17, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court has no authority under this provision to order that a prisoner be placed on home confinement.") (citation omitted).

## III.    CONCLUSION

Based on the foregoing, Fraction's emergency motion for compassionate release and amended motion for transfer to home confinement due to the COVID-19 pandemic, **(Docs. 630 & 635)**, will be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i). Further,

insofar as Fraction is challenging any decision by the BOP that he is not eligible for home confinement designation under the CARES Act, the court will **DISMISS** his motions since the authority to make this determination lies with the BOP Director and not the court. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: June 23, 2020**
14-305-09

21