**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARCAL FRACTION,** | : | |
| **Petitioner** | : | **CASE NO. 3:14-CR-305** |
| **v.** | : | **(JUDGE MANNION)** |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent** | : | |

**MEMORANDUM**

Pending before the court is petitioner Marcal Fraction's ("Fraction") Motion to Vacate, Set Aside, or Correct his 120-month sentence of imprisonment imposed on August 16, 2017. (Doc. 540). Fraction is currently serving his prison sentence at FCC Allenwood in White Deer, Pa. Fraction's motion is filed pursuant to 28 U.S.C. §2255 and is based upon ineffective assistance of counsel claims against his trial counsel. Fraction claims that his counsel was ineffective for failing to file his requested appeal alleging that the court erred in determining that he was a career offender under the Sentencing Guidelines and, he requests the court to reinstate his appellate rights and to resentence him without the career offender classification.

1

On September 29, 2017, the court issued a Memorandum and Order, (Doc. 544, Doc. 545), denying petitioner Fraction's 28 U.S.C. §2255 motion to vacate, set aside or correct his 120-months' imprisonment sentence, (Doc. 540).

On February 7, 2018, Fraction filed a notice of appeal with respect to this court's September 29, 2017 Memorandum and Order. (Doc. 565). On May 23, 2018, the Third Circuit issued an Order staying Fraction's appeal until this court ruled on his motion to supplement his Rule 59(e) motion. (Doc. 577).

On June 26, 2018, the court issued a Memorandum and Order, (Docs. 583 & 584), denying Fraction's motion to supplement his Rule 59(e) motion. (Doc. 550). The court also directed that its October 30, 2017 Order, (Doc. 549), denying Fraction's motion for reconsideration, (Doc. 546), would not be disturbed. Further, the court directed that a certificate of appealability ("COA") would not be issued pursuant to 28 U.S.C. §2253(c).

On January 30, 2019, Fraction filed a motion under Federal Rule of Civil Procedure 60(b) to re-open the proceedings regarding his motion under 28 U.S.C. §2255 alleging that there was an "incomplete analytic framework of controlled substance as defined by the Sentencing Guidelines" and an "intervening change of decisional law" after the court denied his motion. (Doc. 590).

On February 21, 2019, the court dismissed Fraction's Rule 60(b) motion to reopen his §2255 habeas proceeding and denied a certificate of appealability. (Docs. 594 & 595).

On March 7, 2019, Fraction filed a motion for leave of court to strike his Rule 60(b) motion and to consider the arguments raised in that motion as a supplement to his previous motion for reconsideration. (Doc. 598).

On March 20, 2019, the court issued an Order denying Fraction's motion for leave of court to strike his Rule 60(b) motion and to consider the arguments raised in that motion as a supplement to his prior motion for reconsideration. (Doc. 600).

Fraction then filed a timely notice of appeal with the Third Circuit.

On March 28, 2019, a panel of the Court of Appeals granted the defendant a certificate of appealability "as to his claim that counsel rendered ineffective assistance by failing to file a requested notice of appeal," and appointed counsel to represent him on appeal.

Fraction then filed his appeal brief, in which he argued that the district court erred when it failed to hold an evidentiary hearing regarding his §2255 motion. The government filed an unopposed motion to remand the case to the district court for an evidentiary hearing to address Fraction's "claim that he expressly asked his plea counsel to notice an appeal and that counsel declined to do so."

3

On September 27, 2019, a panel of the Court of Appeals granted the government's motion. After noting the "Appellee's unopposed motion for remand to the District Court in the above-captioned case," the Third Circuit entered the following order: "The foregoing motion is granted. The Court will not retain jurisdiction."

On November 18, 2019, the Court of Appeals issued its mandate. (Doc. 616).

On January 21, 2020, Fraction filed a motion to schedule an evidentiary hearing regarding his §2255 motion and a motion to appoint counsel under the CJA, 18 U.S.C. §3006A. (Doc. 619). The government did not oppose the motion.

On March 4, 2020, the court granted Fraction's motion and scheduled an evidentiary hearing for September 16, 2020. The court also appointed CJA counsel, Andrew J. Shubin, Esq., to represent Fraction at the hearing.

The sole issue at the hearing was the validity of Fraction's allegations that he expressly told his trial counsel, Gino Bartolai, Esq., a CJA appointed counsel, to file a notice of direct appeal challenging his sentence and his classification as a career offender, and that counsel failed to do so.

At the evidentiary hearing, both Fraction and Bartolai testified. Also, evidence was submitted by both parties and admitted into the record by the court.

4

The court then directed the parties to file supplemental briefs 30 days after the hearing transcript was filed. The transcript from the hearing was filed on November 5, 2020. (Doc. 666). Both parties then timely filed their supplemental briefs. (Doc. 667, Fraction & Doc. 668).

Upon the court's review of the record in this case, Fraction's §2255 motion, (Doc. 540), the hearing testimony and Exhibits, as well as the briefs of the parties, Fraction's motion will be **DENIED**.

## I.   BACKGROUND[1]

On November 25, 2014, an Indictment was filed against Fraction and several co-defendants. (Doc. 47). On October 5, 2016, Fraction pled guilty to Count 1 of the Indictment charging him with conspiracy of possession with intent to distribute cocaine, in violation of 21 U.S.C. §846, pursuant to a plea agreement. (Doc. 401, Doc. 412). The court directed that a pre-sentence report ("PSR") be prepared. The final PSR was filed on January 20, 2017. (Doc. 496). The PSR found that Fraction was a career offender based on his three prior drug trafficking convictions.

---

[1] The complete background of this case was stated in the court's September 29, 2017 Memorandum and Order and it shall not be fully repeated herein. (*See also* Docs. 583 & 594, 2017 WL 4366531). The factual background of this case is also detailed in the PSR filed on January 20, 2017, (Doc. 496).

The PSR calculated a base offense level of 16, given the amount (100 grams but less than 200 grams) of cocaine involved in Fraction's offense. The PSR, (Doc. 496 at 8), then found that Fraction was a career offender and stated as follows:

> The defendant was at least 18 years old at the time of the instant offense of conviction; the instant offense of conviction is a felony that is a controlled substance offense; and the defendant has at least two prior felony convictions of controlled substance offenses (paragraphs 34, 36, and 38); therefore, the defendant is a career offender. The offense level for a career offender is 32 because the statutory maximum term of imprisonment is 20 years, under USSG §4B1.1(b)(3).[2]

Fraction's offense level was also reduced by three levels for acceptance of responsibility, pursuant to USSG §3E1.1(a) and §3E1.1(b), rendering his total offense level a 29. (Id.).

The maximum term of imprisonment Fraction faced was 20 years pursuant to of 21 U.S.C. §841(b)(1) (C). The PSR concluded that based upon a total offense level of 29 and a criminal history category of VI, Fraction's guideline imprisonment range was 151 to 188 months. (Id. at 14).

Mr. Bartolai, filed objections to the PSR, (see Doc. 497), claiming, in part, that Fraction was entitled to a downward departure from the guidelines pursuant to USSG §4A1.3(b) based on an over representation of his criminal

---

[2]Fraction's prior felony drug convictions are specified in the PSR, (Doc. 496 at 9-10), and they shall be addressed below. The PSR indicated that Fraction had three prior drug trafficking convictions.

history. He then filed a sentencing memorandum on February 22, 2017. (Doc. 513). Fraction's sentencing hearing was held on February 23, 2017. (Doc. 522). Bartolai argued that if Fraction technically was a career offender under the guidelines, the career offender guideline substantially over represented his criminal history. The court overruled Fraction's objections and adopted the PSR, (Doc. 526). However, Bartolai's request for a downward variance was granted and the court sentenced Fraction to a term of 120 months' imprisonment, which was below the recommended guideline range, followed by a 3-year term of supervised release. Fraction was also ordered to pay a special assessment of $100. (Doc. 525). The court allowed Fraction to self-report to prison. Fraction reported to the BOP and began serving his 120-months' prison sentence on March 17, 2017.

Fraction did not file a direct appeal of his sentence with the Third Circuit Court of Appeals.

On August 16, 2017, Fraction timely filed his instant Motion to Vacate, Set Aside, or Correct his February 23, 2017 sentence pursuant to 28 U.S.C. §2255, seeking reinstatement of his right to appeal and re-sentencing without career criminal classification. (Doc. 540). He simultaneously filed a brief in support. (Doc. 541). On September 7, 2017, the government filed a brief in opposition. (Doc. 543).

7

After the September 16, 2020 hearing, the parties filed their supplemental briefs.

The court now decides whether Bartolai rendered ineffective assistance of counsel by failing to file a direct appeal with respect to Fraction's sentence, as Fraction alleges, and whether Fraction is entitled to reinstatement of his direct appeal rights.

## II.   STANDARD

When a district court judge imposes a sentence on a defendant who believes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [the defendant] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. §2255, ¶1; *see* United States v. Eakman, 378 F.3d 294, 297-98 (3d Cir. 2004).

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255(b).

A §2255 motion "is addressed to the sound discretion of the district court." United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980). "[A] motion under 28 U.S.C. §2255 is the proper procedure for a federal prisoner to raise a collateral attack on his or her federal sentence for any error that occurred at or prior to sentencing." Paulino v. U.S., 2010 WL 2545547, *2 (W.D. Pa. June 21, 2010) (citations omitted). "In order to prevail on a §2255 motion to vacate, set aside, or correct a sentence, a Petitioner must show '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" U.S. v. Bates, 2008 WL 80048, *2 (M.D. Pa. Jan. 7, 2008) (quoting Mallet v. U.S., 334 F.3d 491, 496-97 (6th Cir. 2003)). "The petitioner bears the burden of proof under §2255 and must demonstrate his right to relief by a preponderance of the evidence." U.S. v. Ayers, 938 F.Supp.2d 108, 112 (D. D.C. 2013) (citation omitted). Fraction's instant claims fall within the purview of §2255 since they challenge the validity of his sentence. Bates, 2008 WL 80048, *3 ("Claims of ineffective assistance of counsel may be brought in the first instance by way of a §2255 motion regardless of whether the movant could have asserted the claim on direct appeal.") (citing Massaro v. U.S., 538 U.S. 500, 504, 123 S.Ct. 1690 (2003)).

9

Additionally, "Section 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing", "[r]ather, Section 2255 is implicated only when the alleged error raises 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Williams v. United States, 2016 WL 6892375, *2 (M.D. Pa. Nov. 22, 2016) (internal citations omitted).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the assistance of counsel for his defense." U.S. Const. amend. VI. The U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984) established a two-prong test to evaluate the effectiveness of the assistance of counsel. In the first prong, the defendant must show "that counsel's performance was deficient," id., 687, and must prove this by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. In addition, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id., 687-88.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome

10

the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.

Id., 689.

In the second prong, a defendant must show that counsel's deficient performance "prejudiced the defense," because "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, *cf.* United States v. Valenzuela–Bernal, 458 U.S. 858, 866–867 (1982), and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id., 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 694. Thus, to state a successful claim for ineffective assistance of counsel, petitioner must show "both that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527 (2003). "A failure to make the required showing on either prong defeats a defendant's ineffective assistance of counsel claim." Ayers, 938 F.Supp.2d at 113 (citing Strickland, 466 U.S. at 700).

11

## III.   DISCUSSION

This court has jurisdiction over Fraction's motion under §2255 pursuant to pursuant to 28 U.S.C. §§1331 and 2241.

In his §2255 motion, Fraction raises a claim of ineffective assistance of trial counsel, and alleges that Bartolai failed to file his requested appeal of his sentence and raise the claim that the court erred in determining he was a career offender. The court now considers the evidence and the testimony from Fraction and Bartolai at the hearing in deciding whether Fraction has met his burden with respect to his claim.

The court analyzes Fraction's claims of ineffective assistance of counsel using the two-pronged approach prescribed in *Strickland*.

In United States v. Doss, 2017 WL 1709397, *3 (M.D. Pa. May 3, 2017), certificate of appealability denied, 2017 WL 5952261 (3d Cir. Aug. 25, 2017), the court addressed the type of *Strickland* analysis which the court must generally conduct when a defendant raises an ineffective assistance claim based upon counsel's failure to file an appeal pursuant to Roe v. Flores-Ortega, 528 U.S. 470 (2000). *See* Harrington v. Gillis, 456 F.3d 118, 125 (3d Cir. 2006). The Doss Court, *id.*, then stated:

> In *Flores-Ortega*, the Supreme Court held that defense counsel must consult with their client about an appeal in situations where a rational defendant would want to appeal or where the defendant actually expressed interest in appealing. Flores-Ortega, 528 U.S. at 480. The Court defined "consult" as "advising the defendant about the advantages and disadvantages of taking

12

an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478.

The first step in the *Flores-Ortega* analysis is to determine whether counsel consulted with his client about an appeal. <u>Harrington</u>, 456 F.3d at 125. When counsel consults with the defendant, failure to follow the defendant's express instructions to file an appeal is professionally unreasonable and satisfies the first *Strickland* prong. *See id.* (quoting <u>Flores-Ortega</u>, 528 U.S. at 478). When counsel does not consult with the defendant, representation will be deemed deficient if a rational defendant would want to appeal or if the defendant actually expressed interest in appealing. <u>Flores-Ortega</u>, 528 U.S. at 480.

To satisfy the second *Strickland* prong, a defendant must show a reasonable probability that "but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. Factors relevant to this inquiry include whether the defendant pled guilty, whether he received a bargained-for sentence, and whether he waived some appellate rights. *Id.* at 480. Failure to appeal despite the defendant's express instructions to do so is presumptively prejudicial under *Flores-Ortega. Id.* at 484.

In Fraction's plea agreement, (Doc. 410), he did not waive his appellate rights. As such, the court must engage in a *Flores-Ortega* presumption of prejudice analysis. Thus, there is a presumption of prejudice under the second *Strickland* prong if counsel fails to file an appeal when the defendant expressly instructs him to do so. *See* <u>Flores-Ortega</u>, 528 U.S. at 484.

In <u>United States v. Murphy</u>, 2017 WL 3537394 (M.D.Pa. Aug. 17, 2017), a case very similar to the instant case, defendant Murphy filed a §2255 motion claiming that his counsel was ineffective for failure to file his requested appeal of his sentence with respect to his classification as a career

offender. Murphy stated that he requested his counsel to file an appeal since his prior convictions allegedly did not qualify as predicate offenses. As Fraction requests in the present case, Murphy requested the reinstatement of his right to appeal and his re-sentencing without the career criminal classification. Murphy claimed that at the conclusion of sentencing he requested his counsel to file an appeal regarding his career offender classification and that counsel advised him that he would file the appeal. However, Murphy's counsel failed to file the appeal.

The court in Murphy, 2017 WL 3537394, *3, addressed the ineffective assistance of counsel claim of its defendant under Flores-Ortega, 528 U.S. at 478, stating that "the Supreme Court did clarify that where a criminal defendant expresses a wish to appeal, his or her counsel is professionally unreasonable if he or she fails to appeal", and that "the *Flores-Ortega* Court did not require, for grant of habeas corpus, a showing of meritoriousness regarding an appeal not taken because of ineffective assistance of counsel." (citing Velazquez v. Grace, 277 Fed.Appx. 258, 260 (3d Cir. 2008)). The court in Murphy, *id.*, then considered whether its defendant was entitled to an evidentiary hearing stating that "defendant would have to prove that he asked his lawyer to file an appeal and his lawyer agreed to do so but did not" and, that "[a]s a practical matter this would require an evidentiary hearing." The court in Murphy*, id.*, then addressed the case of Solis v. United States,

252 F.3d 289 (3d Cir. 2001), stating that Solis claimed the district court erred by denying him an evidentiary hearing since he alleged that after his sentencing he requested his counsel to file an appeal but counsel failed to file one. The district court in Solis denied defendant's §2255 motion without a hearing. The Third Circuit in Solis, *id.* at 294, held that a hearing was required in that case explaining, "Solis claims that he directed his attorney to file an appeal, but that his attorney failed to comply. On its face, this creates a question of fact whether Solis directed his attorney to file an appeal. If he did, then Solis's Sixth Amendment right to counsel was violated by his counsel's failure to act." Further, the remedy for a violation of the right to effective assistance of counsel regarding the failure to file an appeal when defendant directs him to file one is the reinstatement of the defendant's appellate rights. Solis, 252 F.3d at 294–95.

The court now addresses the testimonies of Fraction and Bartolai.

At the hearing, Fraction testified that he asked his counsel on two occasions to file a Notice of Appeal with respect to his sentence. First, Fraction stated that immediately after his sentencing he spoke to Bartolai about an appeal, and Bartolai advised him that there was no merit to an appeal. Nonetheless, Fraction stated that he told Bartolai he still wanted to appeal his sentence and that Bartolai told him "OK". (NT 79).

Second, Fraction testified that since he did not have to self-report to the BOP to commence serving his sentence until March 17, 2017, Bartolai met him at his house on March 8, 2017, the day before he believed his appeal was due, to discuss an appeal. The court notes that although the parties stipulated that Fraction's deadline to file an appeal of his sentence was March 9, 2017, and although the court advised Fraction at his sentencing that his appeal would be due March 9, 2017, (G-11 at 33), the actual deadline appears to have been 14 days after Fraction's judgment of sentence was signed by the court and filed, i.e., 14 days after February 28, 2017. (G-9, Doc. 525). *See* Fed.R.App. 4. At the hearing, Bartolai also questioned whether the stipulated due date of March 9, 2017, regarding Fraction's appeal, was correct in light of the date that his judgment of sentence was signed and filed.

In any event, Fraction stated that when he met Bartolai at his house on March 8, 2017, he told his counsel a second time to file an appeal. Fraction testified that he had done his "homework" regarding his criminal history after his sentencing and believed that his career offender designation was "erroneous." (NT 18). Specifically, Fraction stated that he discussed the grounds for an appeal with Bartolai and indicated that he believed he was wrongfully sentenced as a career offender based on the New York drug convictions. Fraction testified that he remembered that his New York

16

convictions were not for sale of drugs but were only mere possession offenses, and that his PSR was incorrect since it indicated that these convictions were for drug sales. Fraction stated that he had his sister check the dockets for his New York convictions and that she advised him the convictions were drug possession convictions and were not based on drug sales. Fraction's sister did not send him the dockets for his New York convictions and Fraction did not produce the dockets as Exhibits at his hearing. Nor did Fraction offer any evidence to show that any of his prior convictions did not qualify as predicate offenses for purposes of a career offender designation.

Fraction also testified that Bartolai told him that "after the motion was filed, I would have to get a new attorney." Fraction then testified, "I still stated to him that I would like for you to file the notice of appeal still." Fraction then stated that Bartolai responded that as CJA counsel he does not get paid to handle an appeal and that Fraction had to obtain new counsel. Fraction testified that he "didn't understand a part of the conversation during which Bartolai told him he would not get paid for the appeal." According to Fraction, Bartolai then agreed to file the notice of appeal for him. (NT 6-7).

To support his testimony, Fraction produced a copy of Bartolai's case notes as an Exhibit, D-1 & G-7. Bartolai's notes indicate that on "3/8/17"

17

"meet [with] [defendant] and his wife [at] [defendant's] residence." However, this note was scribbled out.

On direct exam, Fraction initially stated that he did not tell Bartolai why he wanted to file an appeal. But, on cross examination, Fraction admitted that he advised Bartolai that he wanted to appeal since he did not believe all of his state court drug convictions upon which the PSR relied qualified as predicate offenses for purposes of determining that he was a career offender, i.e., the convictions were "erroneous." (NT 15-16).

Also, on cross examination, Fraction admitted that prior to his sentencing, he objected to the PSR since it erroneously indicated he had a New York assault conviction, and that this conviction was removed in the Addendum. However, he admitted that he did not object to the PSR with respect to its reliance on any of his three prior drug trafficking convictions as predicate offenses for his career offender status either prior to his sentencing or at his sentencing hearing. Nor did Fraction object to his classification as a career offender. (NT 16-17).

Fraction then testified that despite the assurances from Bartolai on the two occasions they spoke that he would file a notice of appeal, he never did so, and that the time within which his direct appeal was due expired.

Fraction also admitted that Bartolai sent him a letter dated March 7, 2017, G-4, in which Bartolai advised Fraction that he has 14 days to file an

18

appeal and stated that he would not be filing a notice of appeal unless he was instructed to do so by Fraction.

On cross examination, the government showed Fraction a copy of Bartolai's case note, D-1, for "3/9/17" at "5:00/5:06", and it stated, "tele[phone] [defendant]-Do Not appeal he will contact me for paperwork when he gets in BOP custody." Bartolai stated that he had "no doubt" that Fraction told him not to appeal during their discussions about whether to appeal. Bartolai also unequivocally stated that Fraction never directed him to file a notice an appeal. (NT 53-54, 55-59). Bartolai stated that despite the discrepancy as to Fraction's appeal deadline, he could have electronically filed a notice of appeal prior to the end of March 9, 2017, if Fraction had told him to file it.

Bartolai also testified at the hearing that he discussed Fraction's career offender status with him prior to his guilty plea and its effect on his Guideline range, i.e., 151-188 months, and identified Fraction's prior convictions. As Fraction conceded, when Bartolai received the draft PSR after Fraction's guilty plea, he objected to Fraction's New York assault charge listed in the PSR since Fraction was not convicted of this offense, and it was removed. Bartolai also stated that before Fraction was sentenced, he discussed Fraction's prior drug convictions and explained to him why they constituted predicate offenses for a career offender designation. Bartolai stated that he

got a copy of Fraction's Pennsylvania docket for his drug conviction in Monroe County. Bartolai stated that he told Fraction he would be sentenced as a career offender. In fact, on July 21, 2015, Bratolia wrote a letter to Fraction before his guilty plea and specifically explained to him that he was a career offender, citing to his prior convictions in 2003, 2006 and 2009, i.e., Fractions three state court drug sales convictions. (G-5). Bartoli also correctly advised Fraction that his Guideline range would be 151-188 months' imprisonment.

Along with his July 21, 2015 letter, Bartolai included his notes on Fraction's criminal history, (G-6), in which he clearly explained that Fraction's prior convictions qualified as predicate offenses. Bartolai again discussed Fraction's possible sentence with him prior to his sentencing.

Bartolai testified that he did not object to the PRS on the basis of Fraction's career offender status since there was "no valid basis to object" to it in light of Fraction's three prior drug convictions, but he did argue for a variance at Fraction's sentencing arguing that his prior convictions were over represented. In fact, Bartolai stated that the court sentenced Fraction to 120-months in prison which was below his Guideline range.

Bartolai, who was very experienced in representing defendants in federal criminal cases, (*see* Doc. 668 at 13 & NT 34-35), testified there was no doubt that if a defendant wanted to file a notice of appeal, "you have to

20

file it", without questioning why. He also stated that as a CJA counsel, he was obligated to file a notice of appeal if a defendant requested him to file it. Bartolai admitted that when he first discussed an appeal with Fraction right after his sentencing, Fraction asked him "what would an appeal be like." (NT 79). Bartolai explained an appeal to Fraction, as well as his appeal rights, and probably told Fraction that he thought "an appeal would not have any merits", but left the decision up to Fraction. Bartolai stated that Fraction did not direct him to file a notice of appeal during this conversation in the courthouse. (NT 53-54). Bartolai then explained that after the conversation he felt that the matter of whether to file a notice of appeal "is something I have to stay on. I have to watch this one. This isn't done. The file is not over. I can't put this one away. I'm going to have to hear from [Fraction] about this appeal. So, you know, I left it with him. You know, I left him with whether or not to appeal." (NT 54-56).

Bartolai also believed that he consulted with Fraction before the sentencing hearing, at least generally, about the appeal question. (NT 71). Bartolai also testified that he believed he may have had one or more additional short phone calls with Fraction regarding the appeal issue. (NT 55-56).

At the sentencing, the court also advised Fraction of his appeal rights, and advised Fraction that he could file an appeal *in forma pauperis* if he had no money to pay for the filing fee. (G-11 at 33-34).

At bottom, Bartolai stated that if Fraction told him to appeal after his sentencing, he would have filed a notice of appeal, but Fraction did not ask him to appeal his sentence either on the day of his sentence or at any time thereafter.

Bartolai sent Fraction a letter dated March 7, 2017 with a copy of his judgment of sentence enclosed, and advised Fraction that he had a right to appeal which was due 14 days after the judgment. (G-4). Bartolai also stated that he would not be filing an appeal unless Fraction instructed him to so, in writing, or in person, within the 14 day period. (NT 56).

Despite his March 7, 2017 letter, Bartolai indicated that before Fraction's deadline to appeal, he was going to check with Fraction again to see if he wanted to file an appeal. Bartolai testified that he would not let the appeal deadline expire without getting a definite answer from Fraction as to whether he wanted to appeal. Bartolai then called Fraction on March 9, 2017, as reflected in his case notes, (D-1 & G-7), and they discussed an appeal. (NT 57-58, 80-81). However, Bartolai stated that Fraction told him do not appeal and he noted that.

22

Bartolai stated that he crossed out the March 8, 2017 note indicating that he was to meet with Fraction and his wife at his house and, that he did not go to Fraction's house on this day. Although Bartoli indicated that he met with Fraction at his home prior to sentencing when he wanted to have legal discussions with him, (NT 62), Bartolai stated that after Fraction's sentencing, he did not go to Fraction's house for any reason. Bartolai also explained that as CJA counsel, preparing a notice of appeal was a simple process and that it was a billable task on the CJA voucher, (G-8). He stated that he never told Fraction that he would not file an appeal since he was CJA counsel and would not get paid for it.

As mentioned, Fraction claims that he directed Bartolai on two occasions to file a notice of appeal challenging his sentence based on his career offender enhancement and, he argues that his counsel was ineffective for failing to file the appeal.

As a backdrop in order to put Fraction's claim into perspective as well as to consider the credibility of the witnesses, the PSR specifically identified the drug trafficking convictions upon which it relied to find that Fraction was a career offender. In particular, the PSR, (Doc. 496 at 9-10), specifically indicated Fraction's adult criminal convictions, including the following drug convictions:

23

11/18/02 Arrest; Conviction for Criminal Sale of a Controlled Substance/ Queens County Supreme Court, NY; 5/1/03 sentence of 1 to 3 years imprisonment.

2/19/04 Arrest; Conviction Criminal Sale of a Controlled Substance/ Queens County Supreme Court, NY; 3/31/06 sentence of 2 to 4 years imprisonment.

5/4/09 Arrest; Manufacture, Deliver, and Possession of a Controlled Substance/ Monroe County Court, PA; 8/31/10 sentence of 2 years imprisonment.

As Bartolai explained, Fraction's PSR listed his three prior felony convictions for controlled substance offenses which qualified Fraction as a career offender under USSG §4B1.1(a). To qualify as a career offender, the defendant must have at least two prior felony convictions for controlled substance offenses. *See* USSG §4B1.1(a); United States v. Mateo, 560 F.3d 152 (3d Cir. 2009); U.S. v. Brown, 765 F.3d 185, 188 (3d Cir. 2014). Also, as Bartolai explained to Fraction, he qualified as a career offender pursuant to §4B1.1 based on the following three predicate felony convictions for controlled substance offenses: his 2003 conviction for criminal sale of a controlled substance (PSR ¶34); his 2006 conviction for criminal sale of a controlled substance (PSR ¶36); and his 2010 conviction for manufacture, deliver, and possession of a controlled substance (PSR ¶38). (*See* Doc. 496 at 9-10). *See* United States v. Santana, 677 Fed.Appx. 744 (3d Cir. 2017) (Third Circuit held that defendant's New York state conviction for attempted sale of a controlled substance was a "controlled substance offense" under

24

USSG §4B1.2(b).). *See* <u>United States v. Glass</u>, 904 F.3d 319 (3d Cir. 2018) (Third Circuit held that a Pennsylvania drug conviction under 35 Pa.Stat.Ann. §780-113(a)(30) qualified as a "controlled substance offense" and can serve as a predicate offense for purposes of a career offender enhancement under §4B1.1).

In <u>Santana</u>, 677 Fed.Appx. at 745-46, the Third Circuit stated "[t]he Guidelines define a 'controlled substance offense,' in relevant part, as an offense 'that prohibits the ... export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to ... export, distribute, or dispense.'" (citing USSG §4B1.2(b)).

In the present case, the PSR briefly detailed the facts regarding each of Fraction's qualifying predicate offenses. Regarding his 2003 conviction, the PSR stated, "[o]n November 18, 2002, Marcal Fraction sold a quantity of drugs to an undercover police officer in Queens, New York." Regarding his 2006 conviction, the PSR stated, "[o]n February 19, 2004, Marcal Fraction sold a quantity of a controlled substance to an undercover police officer at the corner of 109th Avenue and Liverpool Street, Jamaica, New York." Regarding his 2010 conviction, the PSR stated:

> On May 4, 2009, Pennsylvania State troopers on Interstate 80 West initiated a traffic stop on a vehicle that was operating too close to another vehicle. Marcal Fraction was identified as the driver. Troopers immediately detected a strong odor of

marijuana. It was determined that Marcal Fraction was operating with a suspended license. He consented to a search of his vehicle, and troopers recovered approximately one ounce of cocaine base (crack), one ounce of marijuana, and packaging materials.

(Doc. 496 at 9-10).

Thus, Bartolai was correct in that Fraction's predicate drug offenses fit squarely within the Guidelines' definition of a "controlled substance offense."

Moreover, Fraction pled guilty and he indicated in his plea agreement, (Doc. 410), that he understood that the total maximum possible prison sentence for the charge he was pleading guilty to was 20 years in prison. The plea agreement also provided that the government would recommend that Fraction receive a 3-level reduction in his offense level for acceptance of responsibility. The parties also agreed to recommend at least 100 grams but less than 200 grams of cocaine were attributable to Fraction for the purposes of sentencing. The government also reserved the right to recommend a sentence up to and including the maximum sentence of imprisonment. The government met all of its obligations under the plea agreement. Fraction then received a 120-months' imprisonment which was half of the maximum possible sentence he could have received and was below the guideline range. (*See* Doc. 526).

This is a case where the testimonies of both Fraction and Bartolai cannot be true. The witnesses contradict each other on the key issue of

26

whether Fraction ever directed Bartolai to file a notice of appeal after his sentencing. No doubt that it is the court's role to judge the credibility of the witnesses in an evidentiary hearing held on a §2255 motion. *See* U.S. v. Purcell, 667 F.Supp.2d 498 (E.D. Pa. 2009).

In considering the above background, the court finds the testimony of Bartolai, which is supported by the government's Exhibits, to be credible, and finds that Fraction did not, at any time, direct his counsel to file a notice of appeal regarding his sentence. Fraction's testimony was less credible and had inconsistencies, as explained above. In particular, the court finds that Fraction's testimony that Bartolai failed to file an appeal because Bartolai did not think he would get paid as CJA counsel is simply incredulous. Bartolai testified that he did not make the alleged statement to Fraction and that he was clearly aware that as CJA counsel he was entitled to claim reimbursement for the time spent filing a notice of appeal, as reflected by the submitted CJA voucher, and that such a notice only requires a modest amount of time and effort. (NT 62-65). Bartolai also testified that he has never in his career told an indigent criminal client any statement as Fraction alleged. (NT 65-66).

Thus, after finding no merit to Fraction's only proffered motive regarding Bartolai's alleged failure to file an appeal after being instructed to do so, the only remaining motive to testify less than truthfully lies with

27

Fraction and his attempt to get a reduced sentence or have his appellate rights reinstated.

Additionally, as the government states, (Doc. 668 at 20), "the record clearly demonstrates that nothing that happened at sentencing related to Fraction's career offender designation was 'news' to him", particularly since prior to Fraction's guilty plea, Bartolai discussed Fraction's career offender status with him and his Guideline range of 151-188 months, and he specifically identified Fraction's prior convictions and explained to Fraction why he would be classified a career offender. The PSR also detailed why Fraction was designated as such. Further, as the government concludes, (Id. at 21), "Fraction did not believe at the time of his sentencing, or during the 14 day appeal period, that he had been incorrectly designated as a career offender."

"The Third Circuit has held that 'a defendant has the right to make a reasonably informed decision whether to accept a plea offer' and that '[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty.'" U.S. v. Purcell, 667 F.Supp.2d 498, 510 (E.D. Pa. 2009) (quoting United States v. Day, 969 F.2d 39, 43 (3d Cir.1992). Further, "familiarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a

28

necessity for counsel who seek to give effective representation." *Id.* (quoting Day, *supra*). Here, Bartolai properly advised Fraction regarding his career offender classification and his sentencing exposure.

At the sentencing hearing, Fraction was advised by the court of his appellate rights. After Fraction's sentencing, Bartolai spoke to Fraction and was well aware that Fraction was considering filing an appeal despite his statement to Fraction that he did not think there would be any merit to an appeal. At this point, the court finds that Fraction did not expressly ask Bartolai to file an appeal. In fact, this finding is consistent with the events, discussed above, subsequent to sentencing that took place between Fraction and Bartolai. When a defendant does not expressly ask his counsel to file an appeal, "a court must determine whether counsel breached a constitutional duty to *consult* with the defendant regarding appeal." "A duty to consult with the defendant regarding appeal arises in two situations: (1) 'when there is reason to think ... that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) [when there is reason to think] that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.'" *Id.* at 514 (internal citations omitted). If "counsel is unsure about [a defendant's] wishes ..., any doubt ... should [be] resolved in favor of appeal." *Id.* at 515 (citation omitted).

Moreover,

[t]he consultation itself must not be deficient. Indeed, "an attorney may not speak cursorily with a client about an appeal and call it a 'consultation.'" For purposes of applying the Strickland standard in the notice of appeal context, Flores–Ortega defines consulting as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."

*Id.* (internal citations omitted).

In the instant case, Bartolai had a duty after sentencing to consult further with Fraction regarding whether he wanted to file an appeal since he "reasonably demonstrated to counsel that he was interested in appealing." *Id.* In fact, since Bartolai knew that the matter was unresolved, he followed up with Fraction in time to file an appeal if Fraction decided that is what he wanted to do. Fraction testified that he did expressly tell Bartolai to file an appeal when he allegedly met with Bartolai at his house on March 8, 2017. However, Bartolai's testimony as well as his case notes indicate that the March 8 meeting did not occur and that during his telephone conversation with Fraction on March 9, 2017, Fraction told him not to file an appeal. Here, based on the evidence detailed above, the court finds that on March 9 Fraction did indeed tell Bartolai not to file an appeal despite the fact that Fraction had earlier expressed an interest in appealing his sentence. As such, the court finds that Bartolai's performance met the objectively reasonable standard with respect to both his duty to consult with Fraction

30

about an appeal and with respect to his failure to file an appeal since Fraction never expressly told him to file one. As such, Bartolai was not ineffective and he did not deprive Fraction of his right to file an appeal.

Thus, the court finds no merit to Fraction's claim in his §2255 motion and will deny his request to reinstate his appellate rights and to remove his career offender classification. *Compare* Solis, 252 F.3d at 294-95 (finding that if the court concludes that trial counsel's ineffectiveness deprived defendant of the right to file an appeal, defendant is entitled to a "*nunc pro tunc* direct appeal.").

## IV.    CERTIFICATE OF APPEALABILITY

A petitioner may not file an appeal from a final order unless a district or circuit judge issues a certificate of appealability ("COA") pursuant to 28 U.S.C. §2253(c). A COA shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). The petitioner must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); *see also* Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, a COA will not issue because Fraction has shown neither the denial of a

31

constitutional right nor that jurists of reason would disagree with this court's resolution of his claims.

## V.    CONCLUSION

Based on the foregoing, the court finds Fraction failed to meet his burden to show that Bartolai was ineffective or deficient in any way. Therefore, the court **DENIES** Fraction's §2255 Motion. (Doc. 540). An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: December 15, 2020**
14-305-11

32